IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:15CR178 |
| vs. | |
| BRIAN ROBINSON, and KIMBERLY SANTIAGO ROBINSON, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the Findings and Recommendation (Filing No. 142), issued by Magistrate Judge Thomas D. Thalken recommending that the Request for Joinder (Filing No. 86) filed by Defendant Kimberly Santiago Robinson's ("K. Robison") be granted; and the Motion for Return of Property (Filing No. 83) filed by Defendant Brian Robinson ("B. Robinson") and K. Robinson (collectively "Defendants") be denied. Defendants filed Objections (Filing No. 151) to the Findings and Recommendation as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government has not responded to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, the Objection will be overruled, and the Motion for Return of Property will be denied.

## BACKGROUND

On November 19, 2015, B. Robinson and K. Robinson, with three other defendants, were charged in a Second Superseding Indictment (Filing No. 70), with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (Count I) and conspiracy to launder money in violation of 18 U.S.C. § 1956 (Count III). B. Robinson also was charged with interstate travel with regard to a racketeering enterprise in

violation of 18 U.S.C. § 1952 (Count II). The Second Superseding Indictment identified a variety of funds seized by law enforcement on June 1, 2015, and alleged that the funds were connected to the crimes alleged and subject to forfeiture.

The Magistrate Judge made detailed Findings of Fact in his Findings and Recommendation (Filing No. 142). Defendants do not object to those findings, and they are adopted in their entirety. The following is a summary of those facts:

On October 23, 2013, law enforcement, suspecting criminal activity, learned that two packages were being mailed from Pittsburgh, Pennsylvania, to Fairfield, California. One package was mailed from B. Robinson in Pittsburgh and addressed to K. Robinson at a P.O. Box associated with B. Robinson in Fairfield. Another was mailed from the same Pittsburgh address by "Pacaproperties" to "S&R Consultants" at the same Fairfield P.O. Box.

Upon the packages' arrival in Fairfield on October 24, 2013, a drug dog alerted to both packages. Law enforcement observed B. Robinson retrieve both packages and leave the post office. Law enforcement then stopped B. Robinson pursuant to a state warrant and seized the packages. Law enforcement found a total of $289,400 cash. Law enforcement thereafter searched B. Robinson's Fairfield residence, and found a gun, $20,000 cash, 3.5 grams of marijuana, and items believed to be associated with distribution of marijuana.

On October 30, 2013, after obtaining a search warrant, law enforcement searched two more packages sent from Pittsburgh and addressed to B. Robinson at the Fairfield P.O. Box, finding and seizing $164,020 in cash. In addition to that cash and other evidence, law enforcement seized funds from the Defendants' home and several

bank accounts in the name of the Defendants and their two minor children. Law enforcement also seized a computer and a boat. On November 13, 2013, law enforcement conducted a search of a parcel of rural property in El Dorado County, California, pursuant to a state search warrant, and found evidence allegedly linking B. Robinson to an interstate marijuana operation.

On February 6, 2014, the United States Attorney in the Eastern District of California filed a civil forfeiture action (the "California Action") against the $164,020 in cash, claiming the currency was involved in federal drug law violations.

On April 25, 2014, an officer of the Seward County, Nebraska, Sheriff's Office stopped B. Robinson as he was traveling westbound on Interstate 80. The officer searched B. Robinson's vehicle and eventually found and seized $380,050 in cash from a duffel bag, other duffle bags smelling of marijuana, and two bags containing small amounts of marijuana. Robinson told law enforcement the money was earned from gambling.

On December 30, 2014, the Eastern District of California entered a Stipulation and Order for Dismissal with Prejudice of the civil forfeiture action against the $164,020 in cash, and ordered the government to return the $164,020 to B. Robinson via his attorney.

On January 8, 2015, the DEA sent a letter to Robinson agreeing to return an additional $315,523 in seized cash and $25,040.63 from seized bank accounts. On February 3, 2015, $504,831.37 was deposited by the government into B. Robinson's lawyer's client trust account. On February 24, 2015, a check for $379,841.37 was distributed from B. Robinson's lawyer's client trust account to B. Robinson, and in

March 2015, B. Robinson deposited the $379,841.37 into one Wells Fargo Bank account. Later, B. Robinson moved the same funds into various bank and investment accounts and withdrew $100,000 in cash.

On June 1, 2015, law enforcement seized $220,330.67 from various bank accounts belonging to B. Robinson and $80,000 cash from B. Robinson's home. B. Robinson asserts that the money seized on June 1, 2015, came from the $379,841.37 that had been returned to B. Robinson through his counsel after the stipulation was entered in the California Action. (*See* Filing No. 83-4 at 2.)

The Magistrate Judge concluded that because the large sums of cash indicated strong evidence of a connection to drug activity, a return of property was not appropriate. The Magistrate Judge also rejected the Defendants' claim that the property should be returned under the doctrine of res judicata, reasoning that nothing indicated that the funds associated with the case in the Eastern District of California were the same funds at issue in this case. The Magistrate Judge also recommended that K. Robinson's Motion for Joinder to B. Robinson's Motion for Return of Property be granted because she demonstrated an interest in B. Robinson's property.[1]

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate

---

[1] No party objects to the Magistrate Judge's recommendation that K. Robinson's Motion for Joinder be granted. The Court, having reviewed the record, adopts the Magistrate Judge's conclusion regarding the Motion for Joinder, and will grant that Motion.

Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

A person whose property has been seized by the government may move for its return. Fed. R. Crim. P. 41(g). The movant bears the burden to "establish lawful entitlement to the property." *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008) (citing *United States v. Clymore,* 245 F.3d 1195, 1201 (10th Cir. 2001) (per curiam)). The Court must "afford the movant an opportunity to meet this burden, which may include, but does not require, an evidentiary hearing." *Jackson*, 526 F.3d at 396. If the movant meets this burden, "[t]he government must then establish a legitimate reason to retain the property, which may be satisfied by showing a cognizable claim of ownership or right to possession adverse to the movant's." *Id.* (citing *United States v. Kaczynski*, 416 F.3d 971, 974 (9th Cir. 2005)). "A Rule 41(g) motion 'is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'" *Id.* (quoting *United States v. Vanhorn,* 296 F.3d 713, 719 (8th Cir. 2002) (internal quotation marks and citation omitted)).

Defendants met their initial burden of demonstrating they were lawfully entitled to the property before it was seized. Several of the accounts seized were in the name of B. Robinson, both Defendants, or were registered to entities related to B. Robinson. Further, other items, including $380,050 in cash, were seized directly from B. Robinson. *See Jackson*, 526 F.3d at 396 ("[Movant's] burden is often satisfied by showing that the property was seized from the movant's possession, as a person from whom property is

5

seized is presumed to have a right to its return.") Accordingly, the burden shifts to the government to demonstrate a legitimate reason to retain the property.

The Magistrate Judge concluded that the government demonstrated two legitimate reasons to retain the property. First, the Magistrate Judge concluded that the property seized on June 1, 2015, may have been contraband and the government's need for the property as evidence justifies its retention at this time. (Filing No. 142 at 5-6.) Second, the Magistrate Judge concluded that the government's forfeiture claim is not barred by the doctrine of res judicata.

I.   **Contraband, Need for Evidence**

The Magistrate Judge concluded that the seized property may be contraband and/or have evidentiary value, justifying the government's possession of the property. "Contraband per se is property the mere possession of which is unlawful. Derivative contraband [is property that] may be lawfully possessed but which became forfeitable because of unlawful use." *United States v. Felici,* 208 F.3d 667, 670 (8th Cir. 2000) (quoting *United States v. Eighty–Eight Thousand, Five Hundred Dollars,* 671 F.2d 293, 297 n.8, 9 (8th Cir. 1982)). Defendants do not specifically object to this conclusion. The government has demonstrated that the accounts, cash, and other items seized relate to their investigation and prosecution. Having reviewed the record, the Court finds the Magistrate Judge's conclusion is supported by the evidence on the record, and it will be adopted.

II.  **Res Judicata**

Defendants argue the government is barred by the doctrine of res judicata from seeking forfeiture of $325,070.07 because the government had a full and fair

opportunity to litigate the issue of forfeiture in the California Action. The Magistrate Judge concluded that the government's forfeiture claims are not barred by the doctrine of res judicata. The Court agrees that res judicata does not prevent the government from retaining the seized property at this stage of the case. However, the following analysis is presented to clarify that Defendants will not be precluded from raising res judicata at later stages of the proceedings to assert that the government is barred from retaining a portion of the seized funds.

Several circuit courts of appeals have held that "res judicata bars a criminal forfeiture following dismissal with prejudice of a prior civil forfeiture proceeding involving the same property." *United States v. Cunan*, 156 F.3d 110, 114-20 (1st Cir. 1998) (citing *United States v. Maull,* 855 F.2d 514, 517-18 (8th Cir.1988) (Arnold, J., dissenting)); *see also United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1152 (9th Cir. 2011) (citing *Maull,* 855 F.2d at 517-18 (Arnold, J., dissenting)); *United States v. Lots 43 Through 46,* 935 F.2d 1134, 1137-38 (10th Cir. 1991) (citing *Maull,* 855 F.2d at 517-18 (Arnold, J., dissenting)).

"The requirements for application of res judicata are: 1) a final judgment on the merits, 2) based on proper jurisdiction, 3) between the same parties, and 4) based on the same claims or causes of action." *Wintermute v. Kansas Bankers Sur. Co.*, 630 F.3d 1063, 1067 (8th Cir. 2011) (citing *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.,* 533 F.3d 634, 639 (8th Cir. 2008)). There is no dispute that jurisdiction was proper in the California Action. Accordingly, the Court will address the other three elements.

### A. Final Judgment on the Merits

The parties' stipulated dismissal in the California Action operates as a final judgment. "When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for purposes of res judicata." *Larken, Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999). The Eighth Circuit has provided guidance as to when a dismissal in civil forfeiture proceedings operates as a final judgment on the merits barring future criminal forfeiture proceedings. *See Maull*, 855 F.2d at 516-17. In *Maull*, a Colorado district court dismissed a civil forfeiture proceeding under Fed. R. Civ. P. 41(b), due to lack of specificity in the government's complaint. *Id.* at 515. The claimant in the civil forfeiture action later was indicted and convicted in the Eastern District of Missouri, where the court ordered that specific property be forfeited, including the property at issue in the Colorado civil forfeiture proceeding. *Id*.

The Eighth Circuit rejected the claimant's argument that res judicata barred forfeiture of the property. *Id.* at 516. The Eighth Circuit reasoned that although the Colorado district court dismissed the case under Rule 41(b), it did not say whether the dismissal was with prejudice and therefore did not answer whether the dismissal was "on the merits." *Id.* To resolve the question, the majority opinion noted that the Colorado district court, after its dismissal of the civil forfeiture claim under Rule 41(b), disbursed the assets to the government in reliance on the Eastern District of Missouri's judgment in the criminal matter. *Id.* "The district court in Colorado thus effectively clarified the ambiguity [regarding preclusive effect] in its earlier order and 'rebutted the presumption of finality created by Rule 41(b).'" *Id.* (quoting *Knox v. Lichtenstein,* 654

F.2d 19, 22, *reh'g denied and opinion clarified,* 661 F.2d 693 (8th Cir. 1981)). Therefore, the Eighth Circuit held the dismissal of the civil forfeiture action in Colorado was not a final judgment on the merits and did not bar the criminal forfeiture proceeding.[2]  *Id.* at 517.

As in *Maull*, the civil forfeiture proceeding in the California Action was dismissed prior to Defendants' criminal forfeiture proceedings in this Court. However, there are two key differences in the facts of this case and those in *Maull*. First, there is no dispute that the stipulated dismissal in the California Action was *with prejudice*. (*See* Filing No. 83-2 at ECF 21-22.) Thus, unlike in *Maull*, there is no ambiguity in the order dismissing the California Action. Second, following dismissal of the California Action, that court ordered the government to take all reasonable steps to return the $164,020 directly to B. Robinson. Both of these actions demonstrate the finality of the stipulated dismissal of the California Action. Accordingly, the dismissal operated as a final judgment for purposes of the res judicata analysis.

The Court specifically notes that the stipulated dismissal in the California Action acts as a final judgment only as to the $164,020. Defendants seek return of funds totaling $325,070.07. The stipulated dismissal in the California Action was filed on December 30, 2014, and related solely to the $164,020 at issue in that case. (Filing No. 83-2 at ECF 22.) On January 8, 2015, the DEA sent a letter to B. Robinson's counsel,

---

[2] Judge Richard Arnold, in dissent, disagreed that the original judgment was without prejudice, and argued that "[t]his adjudication must operate as a bar to the later assertion of the same claim." *Id.* He stated that "although the form of the later action was different, criminal as opposed to civil, the same property was involved, the same claimants, and the same underlying purpose: to deprive [the defendant] of the fruits of his crime." *Id.* As noted above, several circuit courts of appeals have cited Judge Arnold's dissent approvingly when addressing issues arising under similar factual circumstances. *See, e.g., United States v. Cunan*, 156 F.3d 110, 119–20 (1st Cir. 1998); *United States v. Lots 43 Through 46,* 935 F.2d 1134, 1137–38 (10th Cir. 1991).

advising him that the DEA would return an additional $315,523 in seized cash and $25,040.63 from seized bank accounts. The stipulated dismissal order in the California Action did not reference the additional funds returned by the DEA, nor did the complaint in the California Action seek forfeiture of any additional funds. While the stipulated dismissal acts as a final judgment with respect to the $164,020, it does not act as a final judgment as to the additional funds seized by the DEA.

### B. Same Parties or Their Privies

The dispute in this case also involves the same parties as the California Action. "The third element of res judicata requires that "both suits involve the same parties (or those in privity with them)." *Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009). In the forfeiture context, "although the nominal defendant in a criminal forfeiture action (the criminal defendant) is different from the nominal defendant in a civil forfeiture action (the property itself), the interested party in both actions is identical: the owner of the property. And, of course, the government is the plaintiff in both actions." *Liquidators*, 630 F.3d at 1150. Accordingly, there is privity between the parties and the third element is met.

### C. Same Claims or Causes of Action

"Two causes of action are the same if they arise out of the same nucleus of operative fact, and if proof of the same facts will support both actions, or the wrong for which redress is sought is the same in both actions." *Cardona v. Holder*, 754 F.3d 528, 530 (8th Cir. 2014) (internal quotation marks and citation omitted). In *United States v. Liquidators of European Fed. Credit Bank*, the court held that res judicata barred the government from bringing a criminal forfeiture proceeding with respect to the same

property involved in a prior civil forfeiture proceeding because both claims involved the same "transactional nucleus of facts." 630 F.3d at 1151-52. The court explained that this decision was "driven by the unique context of forfeiture." *Id.* at 1152. "Unlike in other contexts, the two types of forfeiture actions [criminal and civil] *always* seek the same result, . . . arise from exactly the same facts, . . . necessarily always involve the same potential plaintiff, . . . and involve the same general determination." *Id.* (emphasis in original). In sum, "[t]he two forfeiture options—civil and criminal—provide the government two different paths to reaching the same goal—forfeiture of the property." *Id.* Accordingly, "[o]nce the government has followed [the civil forfeiture] path to final judgment, permitting the government then to pursue criminal forfeiture effectively would permit the government a second bite at the same apple."[3] *Id.*

In this case, the Magistrate Judge concluded that "nothing indicates the funds associated with the case in the Eastern District of California are the same funds seized on June 1, 2015." (Filing No. 142 at 6.) The Magistrate Judge reasoned that "[t]he mere fact that the previous forfeiture action in the Eastern District of California was dismissed does not preclude the government from seizing currency and property suspected in further and separate criminal activity." (*Id.*)

The Court agrees with the Magistrate Judge's conclusion that the government is not precluded from seizing currency suspected in "further and separate" criminal

---

[3] Other circuits have held under similar facts that subsequent criminal forfeiture actions are barred by res judicata. *See, e.g.*, *Cunan*, 156 F.3d at 119 (citing *Maull*, 855 F.2d at 517); *Lots 43*, 935 F.2d at 1137 (citing *Maull*, 855 F.2d at 517).

11

activity.[4]  However, the Court disagrees that the $164,020 that was the subject of the California Action could have been related to further and separate criminal activity in the context of the Second Superseding Indictment.  As noted above, the $164,020 at issue in the California Action was seized on October 30, 2013.  (Filing No. 83-2.)  The Manner and Means allegations in the Second Superseding Indictment refer to potential criminal activity in Fairfield, California, including specific reference the $164,020 at issue in the California Action. (Filing No. 70 at 4.)  The criminal counts serving as the basis for the forfeiture allegation in the Second Superseding Indictment each allege that the crimes took place as early as January 1, 2013, and occurred in the District of Nebraska and elsewhere.  Thus, the timing and scope of the allegations may include criminal behavior related to the $164,020.[5]  This timing is of particular concern because Defendants did not receive any portion of the $164,020 until, at the earliest, February 24, 2015.  The Second Superseding Indictment alleges that the conspiracy lasted until, at the latest, April 25, 2014.  Accordingly, there is no allegation of "further and separate" activity that could have occurred after the $164,020 was returned.

---

[4] Defendants assert that this conclusion was "invented out of thin air" and that "[t]here is no legal authority whatsoever to support this arbitrary, brave new rule of law, and it is particularly troubling in the face of published appellate opinions that hold exactly the opposite."  (Filing No. 151 at 10 n.12.) Defendants misunderstand the Magistrate Judge's conclusion which is supported by the very appellate opinions to which Defendants refer.  It is true that the First Circuit, and other circuits, have held that "res judicata bars a criminal forfeiture following dismissal with prejudice of a prior civil forfeiture proceeding involving the *same property*." *Cunan*, 156 F.3d at 120 (emphasis added).  However, in each of the other criminal cases, the property at issue was clearly the same property at issue in the previous civil cases. That is not so in this case.  Defendants have shown evidence that they comingled the $164,020 with other funds.

[5] The evidence the government submitted to oppose Defendants' Motion for Return of Property also specifically referenced the $164,020, and included statements suggesting the $164,020 and other funds were part of Defendants' participation in a drug conspiracy and not, as B. Robinson alleged, gambling winnings.

The Magistrate Judge also concluded that "B. Robinson provided no evidence showing the same currency previously seized is the same currency seized on June 1, 2015." (Filing No. 142 at 6.) The evidence suggests the $164,020 was comingled with other funds the government seeks to have forfeited in this case. On February 3, 2015, after the California Action was dismissed and the DEA agreed to return other seized funds, the United States Treasury deposited $504,831.37 into B. Robinson's lawyer's client trust account.[6] (*See* Filing No. 83-2 at ECF 47-49.) On February 24, 2015, B. Robinson's lawyer issued a check from the account to B. Robinson in the amount of $379,841.37. (*See* Filing No. 83-2 at ECF 51.) In March 2015, B. Robinson deposited the $379,841.37 into one account and later moved the money into various bank and investment accounts and withdrew $100,000 in cash. (*See* Filing No. 151.) B. Robinson testified by affidavit that some of the funds he received from his lawyer's client trust account were later distributed to accounts listed in the forfeiture allegation of the Second Superseding Indictment. (*See* Filing No. 151 at 4-5.)

Although forfeiture of some of the funds at issue may be barred by res judicata, when funds have been co-mingled in accounts, subject to deposits and withdrawals, funds may lose their traceable identity. The Eighth Circuit has rejected the contention that legitimate funds are subject to forfeiture if they comingle with illegal drug funds. *United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park, Minn.*, 294 F.3d 954, 958 (8th Cir. 2002). "Under the language of the [forfeiture] statute, only those

---

[6] The evidence does not specify whether the $164,020 at issue in the California Action was part of this deposit. However, the $504,831.37 deposited on February 3, 2015, consisted of two deposits: one in the amount of $340,731.05 (Filing No. 83-2 at ECF 49) and another in the amount of $164,100.32 (Filing No. 83-2 at ECF 47). It is presumed that the deposit in the amount of $164,100.32 consisted of funds from the California Action, however that fact is not specified by the evidence.

proceeds traceable to illegal drug money are subject to forfeiture." *Id*. (citing 21 U.S.C. § 881(a)(6)). Legitimate funds are subject to forfeiture only "if those funds are *knowingly* comingled with forfeitable funds." *Id.* (emphasis added). The record has not been developed as to which of the comingled funds, if any, are subject to forfeiture. Further, at this stage it is inappropriate to determine whether legitimate funds have been comingled with illegitimate funds. Accordingly, even though forfeiture of the $164,020 may be barred by res judicata, the Court cannot identify which seized accounts may contain legitimate funds, and to what extent. Accordingly, the doctrine of res judicata does not bar the government's possession of funds at this stage.

## CONCLUSION

For the reasons discussed, the conclusion of the Findings and Recommendation will be adopted. The Motion for Joinder will be granted and, for the reasons stated above, the Motion for Return of Property will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 142), are adopted;

2. The Request for Joinder (Filing No. 86), filed by Kimberly Santiago Robinson, is granted;

3. The Motion for Return of Property (Filing No. 83), filed by Defendants Brian Robinson and Kimberly Santiago Robinson, is denied; and

4. The Defendants' Objections to the Findings and Recommendation (Filing No. 151), are overruled.

Dated this 13th day of September, 2016

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge