## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiffs,** | **8:15CR178** |
| **vs.** | |
| **BRIAN ROBINSON, et al.,** | **MEMORANDUM AND ORDER** |
| **Defendants.** | |

This matter is before the Court on the Findings and Recommendation, ECF No. 185, issued by United States Magistrate Judge Thomas D. Thalken. The Magistrate Judge recommended that the Motion to Suppress filed by the Defendant Brian Robinson ("Brian"), ECF No. 94, be denied and the Motion for Joinder filed by the Defendant Kimberly S. Robinson ("Kimberly"), ECF No. 102, be granted. The Defendants filed Objections to the Findings and Recommendation, ECF Nos. 187, 188, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government did not respond to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, the Motion to Suppress will be denied, and the Motion for Joinder will be granted.

### FACTUAL BACKGROUND

On November 19, 2015, Brian and Kimberly, with three other defendants, were charged in a Second Superseding Indictment (Filing No. 70), with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (Count I) and conspiracy to launder money in violation of 18 U.S.C. § 1956 (Count III). Brian was also charged with

interstate travel with regard to a racketeering enterprise in violation of 18 U.S.C. § 1952 (Count II).

Brian seeks to suppress any evidence gained by law enforcement on April 25, 2014, on the grounds that the search of his vehicle was conducted in violation of his right to be free from unreasonable searches and seizures, guaranteed by the Fourth Amendment. Kimberly seeks to join Brian's Motion, asserting that although she was not present at the time the vehicle was searched, she may nevertheless challenge the search on Fourth Amendment grounds.

The Magistrate Judge held evidentiary hearings on June 30, 2016, and November 29, 2016. In the Findings and Recommendation, the Magistrate Judge recommended that Brian's motion to suppress be denied. The Magistrate Judge provided a written account of the events surrounding Brian's arrest. The Court considered the transcripts of the hearings conducted by the Magistrate Judge and carefully reviewed the evidence, including the video of the traffic stop.  Based on a *de novo* review of the record, the Court provides the following background:

On April 24, 2014, at approximately 3:50 p.m., Sergeant Michael G. Vance was parked in Seward County, Nebraska, in the asphalt crossover on Interstate 80 facing north between the east and westbound lanes.  Sergeant Vance was accompanied by his service dog, Igor. Sergeant Vance observed a red 2008 GMC Sierra pickup, later determined to be driven by Brian, traveling westbound on Interstate 80 at 79 miles per hour in a 75 miles per hour zone.  Sergeant Vance observed the red pickup switch lanes and follow less than a car's length behind another vehicle. Sergeant Vance pulled out into the westbound lane of Interstate 80 and stopped the vehicle. Sergeant Vance

2

informed the driver, Brian, that he had been stopped for speeding, following too closely, and making an improper lane change.  Sergeant Vance testified that Brian appeared to be shaking very badly.  After receiving Brian's license and registration, Sergeant Vance informed Brian that he would receive a warning for the infractions.

While talking to Brian at the driver's side door, Sergeant Vance noticed a "Black Ice" air freshener hanging from the mirror and another air freshener lying on top of a duffle bag on the floor in the rear of the pickup. Sergeant Vance asked Brian to step back to Vance's police cruiser so he could issue Brian a warning.  Brian exited his vehicle and accompanied Sergeant Vance to the police cruiser, where Brian sat in the front passenger's seat.  Once seated in the police cruiser, Vance ran Brian's driver's license information through dispatch and began to draft a warning.

While writing the warning, Sergeant Vance asked Brian where he was traveling to and from, and for how long he had been traveling. Brian responded that he was traveling from Pittsburgh, Pennsylvania, to Fairfield, California, and he had been traveling for three to four days. Sergeant Vance found Brian's response odd, because Vance believed that Brian should have known exactly how long he had been traveling. Brian also stated that he traveled between these locations depending on the housing markets. Sergeant Vance told Brian that, in winter weather conditions, traveling above the speed limit while changing lanes close to another vehicle was dangerous. Sergeant Vance issued the warning and told Brian to be careful on the rest of his trip.

As Brian opened the door to exit the police cruiser, Sergeant Vance asked if he could ask a couple questions. Brian left the door of the police cruiser open and proceeded to answer Sergeant Vance's questions, although Brian now denies that he

consented to this exchange. Sergeant Vance asked if Brian had any weapons or large amounts of currency in the vehicle.  Brian responded, "No."  At the evidentiary hearing, Sergeant Vance stated that when he asked Brian about large amounts of currency in the vehicle, Brian "literally started shaking and looked towards his truck and said no." ECF No. 153, Page ID 935. Vance then asked Brian if there was any marijuana or other drugs in the vehicle, such as cocaine or methamphetamine. Brian responded, "No."

After this brief discussion, Sergeant Vance asked if he could search Brian's vehicle. Video of the traffic stop shows that Brian responded that he had dog food in the back of his vehicle, and that he needed to get going so he could pick up his dogs at the airport.  Sergeant Vance then told Brian to wait while Vance got his service dog, Igor, out of his police cruiser and Igor conducted a sniff-search of Brian's vehicle.

Sergeant Vance gave Igor the command to begin his sniff-search at the driver's side headlight of Brian's vehicle. Sergeant Vance testified that Igor indicated at the seam of the driver's side door, between the front door and back door of the pickup truck, and again at the seam of the rear driver's side door by the cab. Sergeant Vance testified that Igor was about to indicate a third time at the back bumper, but Vance stopped Igor before he fully completed this indication.

Based on Igor's indications, Sergeant Vance began searching Robinson's truck. Sergeant Vance found a duffle bag containing several vacuum-sealed packages of U.S. currency and another large duffle bag in the bed of the truck containing five smaller duffle bags. Vance testified that he could smell raw marijuana once he opened the large duffel bag. Later, it was discovered that some of the bags contained a few buds of

4

marijuana. Based upon the items found during the search, Brian was arrested and transported to the Seward County Sheriff's office.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a), the Court shall make a *de novo* review of the portions of the Magistrate's Findings and Recommendation to which objections have been made. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

The Fourth Amendment guarantees that people should be "secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and no Warrants shall issue, but upon probable cause . . ." U.S. Const., amend. IV. The Robinsons object to the Magistrate Judge's recommendation that the Motion to Suppress be denied. While they object to several findings of fact and conclusions of law, their essential argument is that (1) Sergeant Vance lacked reasonable suspicion to deploy Igor, and (2) even after Igor's deployment, Sergeant Vance lacked probable cause to search Brian's vehicle.[1] Considering each argument in turn, the Court

---

[1] Kimberly also objects to the Magistrate Judge's finding of fact that Brian consented to answer questions. According to the videotape of the traffic stop, after explaining the warning and telling Brian to be careful driving on his long trip, Sergeant Vance asked Brian if he would answer "a couple questions." It is not clear from the videotape if Brian responded "yes" or "no" to this question, and the Court cannot discern from the videotape whether Brian may have indicated through other means, such as his body language, that he was willing to answer questions. Regardless of Brian's response, Sergeant Vance began asking further questions and Brian responded to each question. Although the Magistrate Judge concluded that Brian responded "yeah" in answer to Sergeant Vance's request to ask questions, such conclusion did not affect the analysis. Accordingly, the Court will not sustain Kimberly's objection on that basis.

5

concludes that Sergeant Vance had reasonable suspicion to deploy Igor, and that the search was justified by probable cause.

## I. Reasonable Suspicion for Sniff-Search

The Robinsons object to the Magistrate Judge's conclusion that Sergeant Vance had reasonable suspicion to deploy Igor. The Magistrate Judge concluded: "The presence of the air fresheners, the air freshener on the duffel bag, [Brian's] nervousness, the incongruity of [Brian's] travel plans and business plans created reasonable suspicion to warrant the brief detention for the K-9 sniff." ECF No. 185, Page ID 1456. Kimberly argues that such facts "could not create reasonable suspicion to warrant the brief detention for the K-9 sniff[.]" ECF No. 187, Page ID 1460.  Brian argues the Magistrate Judge erroneously held that two air fresheners and the Defendant's nervousness supported reasonable suspicion for a sniff-search.  ECF No. 188, Page ID 1473.

Under the Fourth Amendment, "an officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation."  *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016).   Absent reasonable suspicion, however, an officer may not broaden the investigation "'beyond the time reasonably required to complete the mission' of issuing a warning ticket."  *Rodriguez v. U.S.*, 135 S. Ct. 1609, 1615 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).  Once the officer completes tasks related to the traffic violation, "the purpose of the traffic stop is complete and further detention of the

driver or vehicle would be unreasonable, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention.'" *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013) (quoting *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007)). A sniff-search is "aimed at 'detect[ing] evidence of ordinary criminal wrongdoing'" and is not "characterized as part of the officer's traffic mission." *Rodriguez*, 135 S. Ct. at 1615 (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40-41 (2000)).

Once Sergeant Vance issued a warning to Brian and told him he was "good to go," Sergeant Vance completed the mission of the traffic stop. Therefore, Sergeant Vance's subsequent brief detention of Brian for the sniff-search of his vehicle required reasonable suspicion, because it prolonged the traffic stop. *See Rodriguez*, 135 S. Ct. at 1615. Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (quoting *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994)). Nonetheless, police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Smith*, 789 F.3d at 928 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). As a result, "due weight must be given 'to the factual inferences drawn by the law enforcement officer.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quoting *Arvizu*, 534 U.S. at 277).

In order to establish reasonable suspicion, "'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' further investigation." *Woods*, 829 F.3d at 679 (quoting

7

*Terry v. Ohio*, 392 U.S. 1, 21 (1968)).  Although some factors may appear innocent when considered alone, "a combination of factors may give rise to reasonable suspicion."  *United States v. Briasco*, 640 F.3d 857, 860 (8th Cir. 2011).  The Magistrate Judge concluded that Sergeant Vane had reasonable suspicion to deploy Igor based on Brian's extreme nervousness, the presence of multiple air fresheners, and Brian's description of his travel.

### a.  Extreme Nervousness

Sergeant Vance testified that Brian's hands were shaking badly when Vance first approached Brian's vehicle.  Although this nervousness did not initially concern Sergeant Vance, he testified that Brian's nervousness elevated as the traffic stop continued. Vance stated, "his nervousness never subsided like normal when dealing with the innocent motoring public.  His chest was—you could visibly see his chest moving in and out he was breathing so hard."  ECF No. 153, Page ID 933.  Based on Sergeant Vance's experience, he testified that where an individual's nervousness elevates throughout a traffic stop, and does not subside once the individual is told they are receiving a warning, that is an indicator that the individual is being deceptive.

Brian argues the Magistrate Judge improperly accepted Sergeant Vance's testimony regarding Brian's alleged nervousness.  Brian argues that the video of the encounter proves Sergeant Vance's testimony was not credible. Specifically, Brian argues that it was impossible for him to demonstrate extreme nervousness between the time Vance asked about the presence of marijuana in the vehicle and the time Vance began to deploy Igor. A review of the record, however, demonstrates that Sergeant

8

Vance's testimony was not based solely on Brian's nervousness in response to the question, but on Brian's escalating nervousness throughout the stop.

The Court will not question the Magistrate Judge's assessment of Sergeant Vance's credibility. "The assessment of a witness's credibility is the province of the trial court." *United States v. Coney*, 456 F.3d 850, 860 (8th Cir. 2006). While Brian's level of nervousness may not have been visibly ascertainable from the video, Sergeant Vance testified at the evidentiary hearing to Brian's nervousness. After *de novo* review, it cannot be said that Vance's testimony was "so implausible that a reasonable fact-finder would not credit the testimony."  *United States v. Portmann*, 207 F.3d 1032, 1033 (8th Cir. 2000).  Accordingly, the Court will not revise the Magistrate Judge's conclusion as to Brian's nervousness.

### b. Air Fresheners

The presence of multiple air fresheners also contributes to a finding of reasonable suspicion. *See Briasco*, 640 F.3d at 860. Vance noticed one Black Ice air freshener hanging from the mirror and another Black Ice air freshener lying on top of a duffle bag on the vehicle's rear floorboard.  Vance testified that, based on his experience, Black Ice air fresheners in particular are a popular with narcotics traffickers because they are used to mask the odor of a narcotic.  He stated that one air freshener hanging from a mirror was not abnormal, but one lying on top of a duffle bag was uncommon."  ECF No. 153, Page ID 925. The circumstances of this observation, when combined with other factors and Vance's training and experience, support a finding of reasonable suspicion.

### c. Itinerary

9

Sergeant Vance also found Brian's travel itinerary and business plans suspicious. Specifically, Brian told Vance that it had taken him "three or four" days to get to the location where the traffic stop took place. Sergeant Vance found the answer odd because Brian had just made the trip, and should have known how long it took him to drive to Nebraska. The Court concludes this answer contributes to a finding of reasonable suspicion.

Kimberly specifically objects to the Magistrate Judge's finding that Sergeant Vance testified Brian "traveled between California and Pittsburg three or four times a year as a real estate agent." ECF No. 185, Page ID 1452. While the testimony of Sergeant Vance did not state directly that Brian was a real estate agent, Sergeant Vance did testify that "[Brian] told me he was in real estate" and "from my personal dealings with people I knew that were real estate agents, I've never known one that was a certified real estate agent on both coasts." ECF No. 153, Page ID 929. Kimberly argues that because Brian was "in real estate" and not a "real estate agent," Sergeant Vance could not use this information to support a finding of reasonable suspicion. However, there is no indication that this finding materially affects the Court's analysis. Thus, even if the Magistrate Judge's finding misstated the testimony, the record demonstrates this error was harmless. Accordingly, the Court will not sustain Kimberly's objection on that basis.

The sum of these factors, when considered in light of Vance's training and experience, created a reasonable, articulable suspicion that Brian's vehicle contained contraband. *See Briasco*, 640 F.3d at 860 ("Though any one of these factors alone would not rise to reasonable suspicion, when combined and in light of [the officer's]

10

training and experience, they created a reasonable, articulable suspicion that [the defendant] was carrying contraband.") (citing *United States v. Bloomfield*, 40 F.3d 910, 918 (8th Cir. 1994).[2] Accordingly, Vance was justified in briefly detaining Brian after the traffic stop to deploy Igor around the vehicle.[3]

### d. *De Minimis* **Seizure**

Even if Sergeant Vance did not have reasonable suspicion to justify the brief detention of Brian to deploy Igor around the vehicle, under the Eighth Circuit's then-existing precedent, the detention was *de minimis*, and therefore legal. "Eighth Circuit precedent at the time of the stop permitted a *de minimis* extension of a stop to employ a dog." *See United States v. Englehart*, 811 F.3d 1034, 1040 n.1 (8th Cir. 2016). *See also United States v. Rodriguez*, 741 F.3d 905, 907 (8th Cir. 2014), *vacated and remanded by Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). Although the Supreme Court overruled the Eighth Circuit's analysis prior to this Court's analysis, "[the Court applies] the law of the circuit as it existed at the time of the stop." *Englehart*, 811 F.3d at 1040 n.1. The stop at issue in this case occurred on April 24, 2014, prior to the

---

[2] Similar factors in other Eighth Circuit cases have supported a finding of reasonable suspicion to justify further detention. For example, in *United States v. Quintero-Felix*, the Eighth Circuit found the "unusually nervous behavior" of the defendant and the "conflicting and contradictory stories" about the defendant's travel itinerary supported the conclusion that the officer had reasonable suspicion to justify further detention awaiting a dog sniff-search. 714 F.3d at 567-68. Similarly, in *United States v. Bloomfield*, the Eighth Circuit found the fidgeting of the defendant, a strong masking odor, and a pager amounted to reasonable suspicion justifying the detention of the defendant. 40 F.3d 910, 918-19 (8th Cir. 1994).

[3] Brian cites *United States v. Guerrero*, 374 F.3d 584, 590 (8th Cir. 2004), to suggest that the facts in this case do not support reasonable suspicion. In *Guerrero*, the court held it was not clearly erroneous to determine that there was no reasonable suspicion despite the presence of several air fresheners**,** driver's nervousness and inconsistent and limited details about trip, and check showing driver was "flagged" by INS. However, *Guerrero* is not controlling here. In *Guerrero,* the Eighth Circuit was reviewing the grant of a motion to suppress under a clearly erroneous standard. In this case, the Court must conduct a *de novo* review. Under the totality of the circumstances, the Court concludes that Brian's brief detention was supported by reasonable suspicion.

Supreme Court's rejection of the Eighth Circuit's *de minimis* rule. "Thus, the inquiry here requires an application of the then-existing Eighth Circuit precedent allowing for a *de minimis* extension in some circumstances." *Id.*

In determining whether Brian's detention was *de minimis*, "the legally significant time calculation begins when the purpose of the stop was complete." *Id.* at 1041. Here, the legally significant time calculation began when Vance handed Brian his belongings and his warning ticket, and told him he was free to go. *See id.* Sergeant Vance completed the issuance of the warning ticket approximately ten minutes and thirty seconds into the video of the traffic stop. "It is at *this* point that we must begin to quantify the time." *See id.*

Here, "the *entire* time was a *de minimis* intrusion on [Brian's] personal liberty under this circuit's then-existing precedent." *See id.* at 1042. At most, two minutes and fifteen seconds passed between the time when Sergeant Vance handed Brian his warning ticket and when Igor indicated to the presence of contraband, providing probable cause to then detain Brian for a search of the vehicle. *See Rodriguez*, 741 F.3d at 907 (finding a seven or eight minute delay reasonable); *United States v. Mohamed*, 600 F.3d 1000, 1005 (8th Cir. 2010) (holding the police trooper did not unreasonably extend the seizure of the defendant "by prolonging the seizure by five minutes to conduct a canine search"); *United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006) (holding a four minute delay was a *de minimis* intrusion); *United States v. Morgan*, 270 F.3d 625, 632 (8th Cir. 2001) (finding that a delay lasting "well under ten minutes" did not violate the Fourth Amendment). "Under this circuit's then-existing precedent, this minimal extension did not constitute an intrusion on [Brian's] personal

12

liberty and [Sergeant Vance] had not unreasonably extended the stop."  *See id.* at 1042-43.

## II.  Probable Cause to Search Vehicle

The record supports the Magistrate Judge's conclusion that Sergeant Vance had probable cause to search Brian's vehicle. "A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present."  *United States v. Gunnell*, 775 F.3d 1079, 1084 (8th Cir. 2015) (quoting *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)).  In evaluating whether this standard is met, courts "have consistently looked to the totality of the circumstances."  *Gunnell*, 775 F.3d at 1085 (quoting *Harris*, 133 S. Ct. at 1055). "The positive alert by a reliable dog alone establishe[s] probable cause." *United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016). In this case, the Magistrate Judge concluded that Sergeant Vance had probable cause to search the vehicle based on Igor's indication to the presence of drugs. The Robinsons argue that even if Sergeant Vance had reasonable suspicion to deploy Igor, Vance lacked probable cause to search the vehicle because there was no evidence that Igor indicated to the presence of drugs.  The Robinsons further argue that even if the Court finds Igor did indicate to the presence of drugs, Igor's indications were not reliable.

### a. Evidence of Igor's Indications

As an initial matter, both Robinsons challenge whether Igor indicated to the presence of drugs.  Specifically, Brian argues that the Magistrate Judge ignored the Nebraska state-mandated requirements necessary to confirm that a drug detection dog indicates to the presence of drugs. Kimberly objects to the Magistrate Judge's finding of

fact that "Igor indicated at the seam of the driver's door and indicated again at the seam on the back driver's door of the cab." ECF No. 185, Page ID 1453.

Courts must make credibility assessments to determine whether a detection dog has indicated to the presence of drugs in a vehicle. *See United States v. Gregory*, 302 F.3d 805, 811 (8th Cir. 2002). In *Gregory*, the defendant challenged the drug dog's positive indication arguing it was flawed because of a distracting presence of the defendant's own pit-bull. *Id.* Further, a passenger in the defendant's vehicle testified she did not see the drug dog alert. *Id.*  At a hearing on the defendant's motion to suppress, the officer "stated unequivocally" that the drug-dog "alerted at the passenger door and at the trunk."  *Id.* at 811.  The Eighth Circuit upheld the denial of the motion to suppress, noting that "the District Court obviously credited [the officer's] testimony, for it expressly found that [the drug dog] had alerted twice."  *Id.*  The Eighth Circuit reasoned that "[a] finding such as this, which is based on a district court's credibility determination, is entitled to great deference on review, and we cannot say that it is clearly erroneous." *See id.* (citations omitted).

Sergeant Vance testified that Igor indicated twice within moments of beginning the sniff.  Igor first indicated at the seam of the driver's side door, between the front door and back door of the truck. ECF No. 153, Page ID 940. Igor indicated again at the seam of the back driver's side door by the cab. *Id.* Sergeant Vance testified that Igor was about to indicate a third time, at the back bumper, but Vance stopped Igor before he fully completed this indication. *Id.* The Magistrate Judge expressly found that Vance was credible. The Magistrate Judge cited Sergeant Vance's extensive testimony regarding his and Igor's training and history together. Following a de novo review of the

record, including Sergeant Vance's testimony, the Court concludes that the Magistrate Judge's credibility assessment was not erroneous.

Both Defendants argue that Sergeant Vance's testimony was not credible because Igor's indications cannot be seen on the video. Indeed, both expert witnesses testified that the positioning of the vehicle obstructed their view of any alert or indication. However, neither party has cited any case law requiring that a detection dog's indication be recorded on video to pass constitutional muster. Further, although Brian argues that the indication could not have passed Nebraska state standards, he cites no law that such adherence is necessary for Fourth Amendment purposes. The Court will defer to Sergeant Vance's testimony and the Magistrate Judge's assessment of Vance's credibility. Accordingly, the Court adopts the Magistrate Judge's conclusion that Igor indicated to the presence of drugs.

### b. Reliability of Igor's Indications

The Robinsons also assert that Igor's indications were not reliable. The United States Supreme Court in *Florida v. Harris* outlined the framework for determining whether a dog sniff-search is reliable. The Court stated that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 133 S. Ct. at 1057. "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* However, the defendant must be given the opportunity to contest "such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* In determining whether a search

15

dog's alert or indication was reliable enough to provide probable cause to conduct a search, the appropriate inquiry "is whether all facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* at 1058.

In this case, the evidence shows Igor's satisfactory performance in numerous training and certification programs. Sergeant Vance testified that he had worked with Igor since August of 2012.  After a brief bonding period, Igor and Vance went to Illinois for two weeks of narcotic detection training by Michael West, a law enforcement officer with the Peoria Police Department and an international judge of police service dog trials. ECF No. 153, Page ID 893. West was certified as an evaluator and certifier of police service dogs through at the Utah State Police Academy.  *Id.*  At the end of the training period, Sergeant Vance and Igor were certified in narcotic detection through certification trials. Igor was trained and certified to detect marijuana, cocaine, methamphetamine, heroin, and LSD. The following year, Igor was trained and certified to detect ecstasy. Vance and Igor were recertified twice annually after their initial certification and they never failed a certification. ECF No. 153, Page ID 895. Igor was trained to alert first to an odor, and once he pinpointed its location, to then indicate to the odor, usually by a scratch.

The record also contains documentary evidence of Vance's and Igor's training. Sergeant Vance attended an 800-hour course through the Florida Police Work Dog Association for training Police dogs. He completed over 2,000 hours of maintenance training with four different service dogs.  Since the initial certification in 2012, Sergeant Vance and Igor conducted a minimum of eight hours of maintenance training each

16

month. In May of 2014, Vance and Igor were certified as a Narcotic Odor detection team, and are certified for detection of six narcotics: Marijuana, Cocaine, Methamphetamine, Heroin, LSD, and Ecstasy. The certificates show that Igor was certified as a "Narcotic Odor Detection Dog," Sergeant Vance was certified as a "Narcotic Odor Detection Dog Handler," and the two were certified together as a "Narcotic Odor Detection Team."

There is no dispute that Igor and Sergeant Vance have been certified and recertified through bona fide training organizations.  Igor's reliability has been tested repeatedly in controlled settings, and Sergeant Vance's credibility is supported by his extensive relationship and training alongside Igor. Accordingly, the Court is entitled to presume that Igor's alert provides probable cause to search. *Harris*, 133 S. Ct. at 1057.

Brian was given the opportunity to challenge the evidence of Igor's reliability by cross-examining Sergeant Vance and introducing an expert witness, Andrew Falco Jiminez of the Falco K-9 Academy in California.  Jiminez testified to concerns regarding Igor's training and the deployment, noting his concerns with the training logs and field reports of Sergeant Vance and Igor, mainly related to the level of detail in the logs and reports. The Magistrate Judge recognized that while Jiminez may have trained sniff-search detection teams differently, the search passed constitutional muster. As noted above, Brian sited no legal requirement that Vance and Igor follow Jiminez's interpretation of search standards. The evidence presented does not call in to question the extensive training and recertification process that Igor and Sergeant Vance completed. Further, the Government's expert witness opined that Sergeant Vance successfully deployed Igor and followed proper procedure.

17

All of the facts and evidence surrounding Igor's indications on Brian's vehicle suggest that Igor's "sniffs were 'up to snuff.'" *United States v. Holleman*, 743 F.3d 1152, 1157 (8th Cir. 2014) (quoting *Harris*, 133 S. Ct. at 1058). Accordingly, the Court was entitled to rely on Igor's indication, and Sergeant Vance had probable cause to search the vehicle.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted. The Motion for Joinder will be granted and the Motion to Suppress will be denied.

IT IS ORDERED:

1.    The Findings and Recommendation, ECF No. 185, issued by United States Magistrate Judge Thomas D. Thalken, are adopted in their entirety;

2.    The Defendants' Objections to the Findings and Recommendation, ECF Nos. 187, 188, are overruled;

3.    The Motion to Suppress filed by Defendant Brian Robinson, ECF No. 94, is denied; and

4.    The Motion for Joinder filed by the Defendant Kimberly S. Robinson, ECF No. 102, is granted.

Dated this 1st day of March, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge