IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiffs,

vs.

BRIAN ROBINSON, KIMBERLY SANTIAGO ROBINSON, CUC THI SCHAEFFER, JOHN ACOSTA, and ANTONIO BENITEZ GONZALEZ,

Defendants.

**8:15CR178**

**FINDINGS AND RECOMMENDATION**

This matter is before the Court on Defendant Kimberly Santiago Robinson's ("K. Robinson") motion to transfer this case to the United States District Court for the Eastern District of California (Filing No. 267.) Defendants Brian Robinson ("B. Robinson"), Cuc Thi Schaeffer ("Schaeffer"), John Acosta ("Acosta") and Antonio Benitez Gonzalez ("Gonzalez") have joined K. Robinson's motion (Filing Nos. 273, 276, 278, 287), asserting similar grounds for relief.[1] The arguments of each Defendant are considered within this Findings and Recommendation. For the reasons expressed below, the undersigned will recommend that K. Robinson's motion to transfer (Filing No. 267), along with the other Defendants' respective motions, be granted.

**BACKGROUND**

On November 19, 2015, Defendants were charged in a Second Superseding Indictment (Filing No. 70) with conspiracy to possess and distribute marijuana in violation of 21 U.S.C. § 846. K. Robinson and B. Robinson were also charged with conspiracy to launder money in violation of 18 U.S.C. § 1956. B. Robinson was further charged with interstate travel with regard to a racketeering enterprise in violation of 18 U.S.C. § 1952. The Second Superseding

[1] B. Robinson, Schaeffer, Acosta, and Gonzalez have generally alleged that (1) it would be a financial hardship for them to travel to Nebraska, primarily because their livelihood or business is in California; (2) it is easier and more efficient for them to attend trial in California; and (3) their witnesses may not be willing to travel to Nebraska to testify, but may be willing to testify if the trial was in California.

Indictment also contains a forfeiture allegation referencing $380,050 in funds that were seized from B. Robinson during a traffic stop in Seward County, Nebraska.

K. Robinson and the government entered into a joint stipulation (Filing No. 268-2) for purposes of K. Robinson's motion to transfer. Without objection from the government, the other defendants rely upon this stipulation to support their respective motions. K. Robinson and the government generally stipulated, or otherwise agree, as follows:

1. This case is the result of an investigation into B. Robinson and his alleged movement of marijuana from the area of Sacramento, California to Pennsylvania, and his alleged movement of marijuana proceeds from Pennsylvania back to California. Those travels, at times, caused B. Robinson to travel through Nebraska.

2. K. Robinson, Schaeffer, Acosta, and Gonzalez are named in this case because of their alleged involvement in a marijuana distribution conspiracy with B. Robinson. K. Robinson is also charged due to her alleged involvement in a money laundering conspiracy with her husband, B. Robinson.

3. All Defendants live in California. Other than their alleged association with B. Robinson in the marijuana conspiracy, Schaeffer, Acosta, and Gonzalez have no association with Nebraska. Likewise, other than her marriage to B. Robinson and her alleged association with B. Robinson in the marijuana and money laundering conspiracies, K. Robinson has no association with Nebraska.

4. The majority of the governments' law enforcement witnesses reside and work in the Sacramento, California area. There are three Nebraska officers involved in this case: one case agent, one K-9 officer involved in B. Robinson's traffic stop, and another deputy who assisted in the search of B. Robinson's truck. There are approximately ten California officers involved, including a case agent, three K-9 officers, one or two transporting/post-arrest statement officers, officers who participated in searches, and evidence custodians.

5. There will be some phone company and cell tower witnesses at trial. They are expected to testify to cell tower data obtained describing the use of a cell phone belonging to B. Robinson. The parties do not know where they reside or work. There will also be chain of custody witnesses. The parties do not know where these witnesses reside or work. These individuals processed and tested the seized controlled substances.

6. There will be some United States Postal Services employees called as witnesses. The relevant postal workers live and work in Pennsylvania, Indiana, and California. All of these witnesses have no connection to the District of Nebraska and would have to travel for trial.

7. This case involves bank, credit union, and Edward Jones financial records custodians from PNC Bank, Wells Fargo Bank, USAA, and Edward Jones. PNC Bank's corporate headquarters are located in Wilmington, Delaware; Wells Fargo Bank's corporate headquarters are located in San Francisco, California; USAA's corporate headquarters are located in San Antonio, Texas and Edward Jones's corporate headquarters are located in St. Louis, Missouri. The parties do not know if each branch maintains a records custodian for transactions made through the individual branch.

8. Travis Credit Union records custodians may be called as witnesses. These credit union employees live and work in California.

9. K. Robinson expects to call a bank records custodian from the bank where she has her business and personal accounts as a trial witness. The bank and its custodian are located in California.

10. The expert for the prosecution is a CB&P dog training expert who lives and works in El Paso, Texas. K. Robinson's dog training expert is expected to travel to wherever the trial is held.

11. The majority of K. Robinson's witnesses are not willing to travel to Nebraska to testify. Witnesses Valerie Temple and Kimberlee Tran have indicated that they are willing to travel to Nebraska. Theresa Borrego, Jenn Burch, Stephanie Giorgi, Kelly Lamb, Tracy Franklin, Tierra Lewis, Terri Franklin, Angie Tran, Jasmyn Ruth, and Trinette Nastor have indicated they are not willing to travel to Nebraska.

12. The majority of documents the government anticipates it will offer in its case-in-chief were generated outside Nebraska.

13. The lead investigator has custody of some of the potential exhibits. The seized currency has been photographed, indexed and returned to the United States treasury department for recirculation.

14. There are original telephone records which remain in the physical custody of various telephone companies. Copies have been obtained by investigators. These records are digital in nature and copies are located on hard drives and temporary storage devices. These records are transportable.

15. Ownership records to various homes, other real properties, and personal property remain in the possession of mortgage companies or loan companies. Copies have been digitized and are in possession of the investigators and attorneys.

16. The relevant locations in this case are all located in California, except for a home located in Pennsylvania and the location of the traffic stop, which is in Seward County, Nebraska. The parcels of real estate on which the marijuana was allegedly grown, and which are implicated in the government's evidence are located in the Sacramento, California area. Schaeffer, Acosta, and Gonzalez are included in the alleged marijuana conspiracy partly because of their association/involvement with these California properties.

## DISCUSSION

Defendants request that this case be transferred to the United States District Court for the Eastern District of California pursuant to Federal Rule of Criminal Procedure 21(a) and (b). Rule 21(a) provides that upon "the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). Rule 21(b) states that the trial court may, in its discretion, "transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b).

The following factors, often referred to as the *Platt* factors, are considered when determining whether transfer is appropriate under Rule 21(b): (1) location of the defendant; (2) location of possible witnesses (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect transfer. *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964). Having considered each of these factors, the undersigned concludes that transfer is warranted in this case.[2]

### 1. Location of Defendants

Defendants all reside in California. Other than their alleged association with B. Robinson in the marijuana conspiracy, Schaeffer, Acosta, and Gonzalez have no association with Nebraska. Likewise, other than her marriage to B. Robinson and her alleged association with B.

[2] Because the undersigned finds that transfer is appropriate under Rule 21(b), this Findings and Recommendation will not explicitly address transfer under Rule 21(a). Also, while K. Robinson did not include a request for transfer based on the Sixth Amendment, Schaeffer did include such arguments in support of her motion (Filing No. 280). Again, because the undersigned concludes that transfer under Rule 21(b) is warranted, Schaeffer's argument in this regard will not be addressed.

Robinson in the marijuana and money laundering conspiracies, K. Robinson has no connection to Nebraska. Thus, this factor weighs in favor of transfer.

**2. Location of Witnesses**

The location of witnesses strongly favors transfer. The joint stipulation clearly shows that the vast majority of witnesses will come from California. There are only three Nebraska officers involved in this case, and there are approximately ten California officers involved. Travis Credit Union records custodians may be called as witnesses, and these employees live and work in California. Moreover, the majority of K. Robinson's fact witnesses are located in California and are unwilling to travel to Nebraska. Similarly, Schaefer submitted an affidavit which states that she has eight witnesses who are located in California. Gonzalez likewise has asserted that all of his witnesses reside and work in California, and may not be willing to travel to Nebraska to testify. Given the limited number of witnesses located in Nebraska, and the large number located in California, as well as witnesses' unwillingness or inability to travel to Nebraska, this *Platt* factor strongly supports transfer.[3]

**3. Location of Events**

This case is the result of an investigation into B. Robinson and his alleged movement of marijuana from the area of Sacramento, California to Pennsylvania, and his alleged movement of marijuana proceeds from Pennsylvania back to California. The government acknowledges that nearly all of the locations relevant to this prosecution are outside the District of Nebraska. Although drugs could have possibly moved through Nebraska during transport, the only direct connection to Nebraska is the traffic stop that occurred in Seward County.

It is clear that the location of events will be at issue in this litigation. Schaeffer, Acosta, and Gonzalez are included in the alleged marijuana conspiracy partly because of their

[3] There are witnesses located outside of California, including, but not necessarily limited to, telephone company employees, postal service employees, financial records custodians, expert witnesses, and other individuals involved in law enforcement. However, these witnesses do not appear to have any relationship with Nebraska.

association/involvement with California properties. Moreover, documents relating to the California properties will likely be used at trial. The location of events favors transfer.[4]

**4. Location of Documents and Records**

The government contends that all of the documents and records it will use in its case-in-chief are presently located in Nebraska. However, the majority of these documents were generated outside of Nebraska, and many of them are ownership records related to California properties. Also, the majority, if not all, of the documents are digitalized and easily transportable. Therefore, the location of documents weighs in favor of transfer.

**5. Disruption of Defendants' Business**

There would be far less disruption to Defendants' businesses and employment if these proceedings were transferred to the Eastern District of California. Defendants all reside in California. K. Robinson is self-employed as an esthetician, and has two employees. K. Robinson contends that she could lose clientele if she was absent from work for a lengthy period of time. Schaeffer manages real estate in California. She claims that she cannot effectively manage properties, which includes the collection of rent and property maintenance, when she travels to Nebraska.

The Court acknowledges that Defendants' businesses and employment will be impacted no matter the location of trial. However, holding trial in California would seemingly provide Defendants more of an opportunity to oversee their affairs. If trial were held in California, Defendants could potentially modify their working hours to accommodate court proceedings. Such an adjustment will not be possible if this case remains in this forum. Thus, this factor weighs in favor of transfer.

---

[4] Some of the defendants have argued that because marijuana is legal in California, trial should occur there. However, while possession may be legal in California, transporting marijuana over state lines is not. Therefore, the undersigned did not consider the legality of marijuana possession in California when evaluating whether this matter should be transferred.

**6. Expense to the Parties**

It would be far more costly for Defendants if these proceedings remain in Nebraska. Defendants would need to travel for a lengthy trial and other court hearings. With every trip, Defendants would incur travel and lodging expenses, as well as other incidental travel costs. Defendants would also incur increased costs for time spent off-work.

Likewise, government expenses would be greater if trial occurs in Nebraska. The majority of witnesses are located in California. There are only three Nebraska law enforcement officers involved. In contrast, there are ten law enforcement officers located in California, as well as records custodians. The expense to the parties factor favors transfer.

**7. Location of Counsel**

Currently, Defendants' attorneys are all located in Nebraska. Previously, K. Robinson and B. Robinson had retained counsel in California. However, on November 9, 2017, these California lawyers were granted leave to withdraw because the Robinsons could no longer afford their services. (Filing No. 256.) K. Robinson maintains that transferring the case to California would allow her previous attorney, who is her counsel of choice, to reappear in this case as court-appointed counsel. B. Robinson contends that transferring the case would allow his appointed counsel in California to interact with his previously-retained California attorney.

The Assistant United States Attorney assigned to this case is also in Nebraska. If this case is transferred, it is unknown whether this case would be reassigned to a different government attorney. The government contends that if the case were reassigned, new counsel would have to spend a great deal of time studying the case.

The Court finds that location of counsel is a neutral factor in the *Platt* analysis. If this case were transferred to California, there is no guarantee that a California court would appoint K. Robinson's counsel of choice. Also, if a new prosecutor was assigned following transfer, that prosecutor would be in the same position as California counsel who would be appointed for

Defendants. A new prosecutor would also be in the same position as K. Robinson and B. Robinson's current Nebraska counsel, who were appointed on November 9, 2017. The location of counsel neither supports, nor hinders transfer.

**8. Accessibility of Place of Trial**

The parties generally agree that this factor is neutral, thus it neither weighs in favor nor against transfer. The Court notes, however, that California is far more accessible to the majority of witnesses.

**9. Docket Condition**

The government accepts the caseload profile supplied by K. Robinson is support of her motion to transfer. (Filing No. 268-1.) The profile shows that the Eastern District of California has more judges and fewer criminal cases than the District of Nebraska. This circumstance arguably weighs in favor of transfer. Still, the District of Nebraska remains fully capable of managing this litigation. Thus, the undersigned concludes that this factor is neutral in the *Platt* analysis.

**10. Other Special Elements**

This case has been on file since May, 2015. The government contends that special consideration should be given to the amount of work the District of Nebraska has already performed in this case. The government points out that this Court has already conducted several lengthy hearings, and has adjudicated two suppression motions.[5] There are also other motions to suppress pending in this Court, which are fully briefed and awaiting a hearing date. The

[5] One of the last adjudicated motions was a motion to suppress evidence seized during the traffic stop of B. Robinson. Former defense counsel decided that the chance of success of a motion for change of venue would be improved if the motion to suppress were granted. Therefore, a tactical decision was made to postpone the filing of a motion to transfer until a ruling was issued on the motion to suppress. (Filing No. 268-3.)

government contends that the Eastern District of California will have to spend a lot of time acquiring historical knowledge of this case, which would delay disposition.

The Court appreciates that it has handled many aspects of this case. However, the Court has no doubt that the Eastern District of California is fully equipped to review and readily handle issues raised in this action. Therefore, this factor is neutral in the *Platt* analysis.

Accordingly,

Having fully considered the matter and arguments presented, the undersigned concludes that this case should be transferred to the Eastern District of California.

**IT IS HEREBY RECOMMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Defendants' respective motions to transfer (Filing Nos. 267, 273, 276, 278) be granted.

Dated this 19th day of April, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.